Madam Clerk, please call the next case. 114-1336, Vance Wyer v. FedEx Freight. Counsel, you may proceed. Thank you, Your Honor. Members of the Court, Mrs. Zeruri, my name is Jerry Cooper, and I represent FedEx Freight. We're here today to ask this Court to reverse the circuit court decision in this matter and to reinstate the commission. So just procedurally, briefly, the commission found in favor of the claimant and the circuit court were found against the claimant. The circuit court reversed that, correct? Correct. And we've gone over and over the standard of review, so I won't go into that. But as far as the evidence and what evidence they found to support their denial of a low back injury as opposed to a shoulder blade area back injury, the petitioner himself twice indicated in his testimony that he injured his right shoulder and upper back. He pointed to the area, shoulder and the back. He testified, and this is from the transcript, he felt a twinge, a stab, a stabbing pain in his back around the shoulder blade area. The commission noted that there was a failure of proof as far as reporting any low back problems in the beginning or for several months. He didn't complain of back problems, but you're saying not low back, is that correct? Correct. He complained of thoracic and the medical speaks to thoracic. Now, there's always an argument about how can you tell the difference between lumbar and thoracic. In this case, we're specifically, the petitioner's giving us a specific area of that thoracic spine when he says it's at the shoulder blade level. Well, let me ask you this. During the course of the claimant's medical treatment from April 8th, 2011 to his last appointment with O'Keeffe in October of 2011, didn't the medical records addressing the treatment make reference to the claimant suffering low back pain? Yes. Once he, three months, four months after the accident when he went to the chiropractor, he was getting treatment for both. The interesting thing as far as a matter of failure of proof in that regard is the chiropractor in each visit said that this fellow had suffered an injury on April 8th instead of the January date. Later, he tried to paper over it or explain it with a letter to Dr. O'Keeffe. Dr. O'Keeffe, his records and everything, as far as causal connection or whatever, they go against the Alexian Brothers records, which were the first treater. So we go to the Alexian Brothers Hospital. We have a recurring diagnosis as they pass him through that system the five or six times that he showed up. They mention that it's thoracic strain. Well, okay, and I'm just going off of the brief. I don't have the medical records to look at here, but you're saying that these follow-up visits, they show a continuing diagnosis of thoracic strain. Correct. What was it that the claimant actually indicated in terms of his problem? Until he went six months later or so to the treating orthopod, he said that it was his upper back at the shoulder blade, his back at the shoulder blade. So the Alexian Brothers records document his compliance as being in the thoracic region? Correct. He complained of back pain generally, right? In the Alexian Brothers, he complained of back pain. He complained of back pain. Okay, well, that's what I'm getting at here. How is it that it gets to a diagnosis of the thoracic area, of thoracic strain? Did he identify, and is it contained in the medical record, that he localized his complaints of back pain at Alexian Brothers to the thoracic region? Yes. And so he never complained simply of back pain? He never complained of low back pain. He did complain of back pain, and it was directed to the thoracic spine as far as what they diagnosed each time and said they were treating. And when they referred him to the physical therapy, physical therapy was told to address the thoracic spine. In any event, beginning on April 8th, it's clear he was complaining of low back pain. You're not disputing that? I am not disputing that. Was it O'Keefe informing the doctors? What did they opine? O'Keefe? O'Keefe said that this was an injury that occurred as a result of that accident. He gave a causal connection, correct? In a manner of speaking. What about Foreman? Did he give a causal connection opinion in a manner of speaking? Yes, in a manner of speaking. And as far as, for instance, O'Keefe is concerned, the different things that the commission saw that made them, you know, make the decision or conclusion, was that there's part of it where he mixed in another problem the fellow was having, and that was that he had had prior foot injuries. He had hardware, specifically a screw. Dr. O'Keefe said in one of his notes that that could affect his weight bearing, could affect his stride, and that he, in fact, complained about that. The doctor said he wasn't sure if that was, you know, part of the problem. Let me see if I can summarize this and tell me if it's wrong, but I'll try to be fair and objective. You have the opinions of Dr. O'Keefe informing that the accident, work accident January 13, 2011, there's a causal connection between the claimant's condition of ill being and his low back in the accident, correct? Correct. The claimant testifies that he has low back problems. Okay. Alexian Brothers' document, he didn't specifically complain of low back pain, but he did reference, generally, pain in the back, but not the low back, correct? Right. So why do we think he couldn't have injured his low back on January 13, 2011? There's some cases that we see where one serious injury is treated and the follow-up injury, they say, oh, he also has this problem, like something with an arm or something. That's not the case here. The case here consistently indicated shoulder blade area. He testified, and the commission has it in the decision, that it was at shoulder blade level. And as I said, he was talking about a stabbing. The claimant testified he never had any low back problems? No. That's not what I'm saying. I'm saying when you talk about what actually happened and what area it was addressed to, he said he had a stabbing pain in his back around the shoulder blade area. He testified to that. And this is how many months or how many whatever, you know, later, that he's still testifying that it was in the upper back. Did he have an MRI in July? He was referred for an MRI, I can't recall. And what did the MRI show? Traumatic tear at L4-5. Yeah. And where's that located? Where's the L4-L5? Low back? Low back. You know, right at the end of the lumbar spine. EMG showed a right L5 radiculopathy. Mm-hmm. Isn't that some objective evidence of a low back problem? There's no evidence of a low back problem or any of that until the doctor orders the studies, I believe it was July 31st. Well, maybe he didn't know what the specific source of his pain is and now you've got objective medical evidence. How do you discount that? You're saying, well, the claimant didn't specifically testify to it, so even though he has this tear, it's irrelevant because he didn't testify to it. That's sort of what you're saying, isn't it? Well, what I'm saying is that he didn't say I felt a twinge in my low back. He didn't say I felt a twinge, a stab. That's correct. Okay. The radiating pain that would come out of something in the shoulder, let's say, you know, T7 or something, that would radiate down the arms. It wouldn't have this radiculopathy down the legs. But what about this tear that was revealed in the MRI? It's, you know. It's what? Does it matter? No, it does matter, but it's addressed to the low back. It's in the lumbar spine. Yeah, low back. Right, specific levels of the lumbar spine. And isn't this about the low back problem? Isn't that why you're here? Pardon me? Isn't the low back an issue in this case? Sure. His question is whether or not he suffered a low back injury in January. And he says there's a tear. There's objective medical evidence of a low back injury. But you're saying there's no connection. At the end of July. You're saying there's no connection between that condition and the incident earlier. Correct. So he could arguably have that condition. Your position is he could have that condition from a number of other incidents or whatever. Correct. But the position of the fact finder said no. In contemporary complaint, Lex and others, medical records, which went on for how long after the incident? Five visits. Five visits. Over what period of time roughly? The last physical therapy was March 15th, 2011. So that would be how many months? Two months. Two months. Okay. Is there any dispute with the arbitrator's finding that there is no record to indicate that he was anything less than asymptomatic and fully functional and treatment free for the right shoulder, low back pain prior to his accident in January? Got any evidence that he had any back problems? No, we have no evidence that there were any prior problems. So we have no evidence that he had any back pain prior to January. He only complains at Election Brothers, I have a pain in my back. They say thoracic. And beginning April 8th, every medical record in this record after April 8th references low back problems, including an MRI and an EMG. Correct. And as far as the commission decision is concerned, they found that the petitioner, you know, that Dr. O'Keefe, who's the basis of this opinion, was not credible. And the background of whatever went into that opinion, because he wasn't deposed, was not credible. And you're saying, to reverse, we have to find that an opposite conclusion is clearly apparent, and that's going to be your argument, right? Yeah. And right now, I mean, the case is allowed for a shoulder blade and thoracic back condition. It's the additional condition. And the claimant's testimony was area-specific as to what happened on the date of the incident and the pain. Yes. And it wasn't vague. So we would ask that the court reverse the circuit court and reinstate the commission's decision. Thank you. Good morning. My name is Lisa Azuri, attorney for Petitioner Dan Sawyer. You know what the issues are. He's focusing in on the lack of complaints of Lexing Brothers and the claimant specifically saying, at least for a couple of months, it was the upper back. So how do you address that? So I just wanted to clarify those facts. At trial, he testified that he could not distinguish between his upper back and lower back pain. So he testified that immediately after the accident, he felt upper back and shoulder blade pain. And thereafter, he was questioned on direct and cross-examination and stated he just couldn't distinguish between the pain in his upper back and his lower back. But he never pointed to his lower back. He never pointed to his lower back. After the incident. Correct. He was only asked what he felt immediately after the accident, not what he felt thereafter. So he goes to the company clinic. He tells the company clinic that he injured his back in general. And the Alexian Brothers notes are scant notes. They're not narratives. It's not in a narrative style. It simply says Petitioner injured his back and gives a diagnosis of a thoracic sprain. So then. Is it a reasonable interpretation by the commission that that is indeed, I mean, they're obviously treating for a condition, but the condition is the upper back? Initially, yes. But by March, when the petitioner is still seen at Alexian, they're giving him bending and squatting restrictions, which would only be relevant to the lumbosacral spine anyway. He tells the chiropractor he injured his low back on the date of accident. He tells the primary care physician he injured his low back on the date of accident. He tells the board certified orthopedic physician that he injured his low back on the date of accident. He tells his physical therapist that he injured his low back on the date of accident. And all of those providers had objective findings with regard to the low back. Was he asymptomatic before? Yes. And there's no evidence of any intervening accidents. And perhaps most importantly, respondent never gets an IME. So respondent correctly notes that the standard is a manifest weight, but that one notation by the commission that he felt upper back symptoms first is not an adequate fact to support his decision. Why is that? Because there's no requirement under the act that just because you immediately feel pain in one area, symptoms in your lower back should be precluded thereafter. I mean, he simply could have lied on the stand or been untruthful and said, I felt low back symptoms on the date of accident and thereafter. But that's not what happened. He felt upper back symptoms first. And he was maneuvering a piece of plywood overhead, so that makes perfect sense. And then he testified again at trial that he couldn't distinguish between upper back and lower back pain. That's exactly what he told his therapist, too. He said exactly that he felt pain in his upper back, but he also noted pain thereafter in his lower back. So it was one and the same for him. The commission agreed that he was being truthful and that he was a credible witness. There was no evidence of any care, any preexisting conditions before that, or intervening accidents. And as well, not only is it an inadequate fact to support his finding, but it's well-settled law in our state that any natural consequence that flows from an injury that arose out of and in the course of claimant's employment would be compensable unless caused by an intervening accident. So here, the arbitrator's decision was that the thoracic accident occurred, that the condition was related to the accident in question. So even if he did experience low back symptoms later than his upper back symptoms, it shouldn't have mattered. You've got Foreman's opinion, too, don't you? Yeah, correct. We have the two causal connection opinions. The only medical testimony in this case are opinions of causal connection. That's correct. There's no contrary opinion. Sorry, go ahead. No contrary opinion. Correct. So, again, the commission writes one paragraph in support of its decision for causation and merely states that O'Keefe's opinion is unpersuasive without pointing to anything else. So Respondent correctly notes that it's the function of the commission to resolve conflicting medical evidence, but there was no conflict in this case whatsoever. Foreman and O'Keefe opined on causation that was in favor of the claimant on the low back issue specifically, not just the thoracic spine. And in all of the relevant cases cited to by Respondent, Bernardoni, Long, Weston, Hotel, the employer either obtained an IME, multiple IMEs, or a record review. So, in other words, in those cases, there was conflicting medical opinions and there was a conflict to resolve. Here, there is no conflict to resolve. And, in fact, I couldn't find any cases that stood for the proposition that the treating physician's well-reasoned, board-certified orthopedic opinion should be tossed out when there are no other opinions to cite, especially when the record is replete with lower back references and there's no treatment prior, there's no intervening accidents. And based on that, you believe an opposite conclusion is totally fair, correct? Correct, yeah. The only way I could imagine the record appearing cleaner would be as a petitioner testified that he felt low back symptoms on the day of the accident, but that's not what happened to him. I have nothing further. Thank you. Thank you. Counsel may reply. Where did his low back problems come from, do you know? No, I don't. The chiropractor seemed to think that something happened on April 8th. No, April 8th was his first appointment with the chiropractor. Now, that's silly. I mean, he didn't come in there. There is no evidence in here that he came in directly from an injury to the chiropractor. It's a typo. And he explained it. April 8th was his first appointment with the chiropractor. Now, you've got two doctors that give causation opinions. Every medical record from April 8th on says low back, and the only thing they can hang their hat on is they don't particularly like O'Keefe's opinion because he based it on the fact that he said the guy had pain from the very beginning. That's it. It's really all of the basis of his opinion about what he knew, what he knew about how it happened, as far as the original accident concerned, when the complaints were. He thought the complaints started right at the time. That's what the commission hung its hat on, that O'Keefe believed it started at that time. But what do you do with Foreman's opinion? I mean, he's got an injury to his low back. There isn't any question about this. No, once the narrative is established, then all the information that's going to go from one doctor to another is going to be the same information. But it would occur to me that Alexian Brothers, there is nothing in any history in Alexian Brothers where he restricted his complaints to thoracic spine. He said, he just said, my back hurt. That's all he said. And the only thing you have is sprain slash thoracic, and that's all that's in the Alexian records. Sprain slash thoracic, a note. Correct. And it's the commission's province to, you know, to decide these medical matters. Well, they can't do it based on consultation of the entrails of chickens. They have to do it based on a record, and that is all they've got. Okay. And your position is it's sufficient, right? Yeah. Okay. Okay. Okay. Thank you, counsel Bowles, for your arguments in this matter. We'll take an advisement that this position shall issue. We'll stand at recess until tomorrow morning at 9 a.m.